IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROY MUDRICK and CAROL MUDRICK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-04-593 |
| | § | |
| CROSS SERVICES, INC., et al., | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANT'S MOTION TO APPLY GENERAL MARITIME
LAW AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises out of the death of Jonathan Mudrick ("Decedent"), Roy and Carol Mudrick's (collectively, "Plaintiffs") son, while he was working on the navigable waters of the Nikishi Bay, off the coast of Alaska. Now before the Court are Defendant Cross Equipment, Ltd.'s ("Defendant") Motion for Summary Judgment and Motion to Apply General Maritime Law. For the following reasons, Defendant's Motions are **GRANTED**.

I. Background

Decedent worked for Cook Inlet Spill Prevention and Response, Inc. ("CISPRI") as an oil spill technician. On October 17, 2002, he was fatally injured when he was struck on the head by a steel anchor cable. At the time, he was working aboard Barge 141, a 257 foot barge equipped with emergency spill equipment, in Nikishi Bay, Alaska. Barge 141 had no independent propulsion system and required a tug to move it. At the time of the accident, Decedent was operating the stern anchor winch, which was manufactured by Defendant. A post-incident investigation conducted by MDE

-1-

Engineers, Inc. found that the winch was operating properly at the time of Decedent's accident.  The Coast Guard Report concluded that the accident was most likely due to Decedent's error.

After the accident, Decedent's widow, April Mudrick, settled with Decedent's employer on her wrongful death claim, which was mediated.  Both CISPRI and Mrs. Mudrick concluded and agreed for purposes of the mediation that Decedent was a Jones Act Seaman.  Mrs. Mudrick entered into a settlement for $2,900,000.00, on behalf of herself, her children, and as representative of Decedent's personal estate.  She released Decedent's employer and Defendant, among others, from any and all future claims and liability.

On October 13, 2004, Plaintiffs filed suit against Defendant and others, under the Texas Wrongful Death Act for negligence, strict liability, and breach of warranty.  Plaintiffs seek non-pecuniary damages only.  Defendant now argues that because Decedent is a Jones Act seaman, and because survivors of Jones Act seamen cannot recover non-pecuniary damages from non-employer third parties, such as Defendant, they cannot recover under any theory of law advanced in their complaint, and therefore, Defendant is entitled to summary judgment as a matter of law.  Plaintiffs respond that Decedent is not a Jones Act seaman.

## II.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P.

56(e), *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

## III. Analysis

The success of Plaintiffs' claims depends upon whether Decedent was in fact a Jones Act seaman. If he was, then his survivors may not recover non-pecuniary damages from non-employer third parties, such as Defendant. *See Scarborough v. Clemco Industries*, 391 F.3d 660, 668 (5th Cir. 2004), *cert. denied*, 125 S Ct. 1932 (2005). If he was not a Jones Act seaman, then Plaintiffs' claims against Defendant may proceed. Aspects of Decedent's status as a Jones Act seaman are also determinative of Defendant's Motion to Apply General Maritime Law to this case.

### A. Decedent's Seaman Status Under the Jones Act

Plaintiffs contend that the Jones Act does not apply because Barge 141 is not a Jones Act vessel, and that Decedent is not a Jones Act seaman. The Supreme Court has identified "two basic elements" of seaman status: (1) "the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission," and (2) "the worker must have a connection to a vessel in navigation (or an identifiable fleet of vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 376, 115 S. Ct. 2172, 2194, 132 L. Ed. 2d 314 (1995). The burden of proving seaman status is on the party claiming the benefits derived therefrom. In this case, Defendant bears this burden.

-3-

*1. Contributing to the Function of a Vessel*

To be a seaman, Decedent, in the course of his duties, must have contributed to the function of a vessel. *See Waguespack v. Aetna Life & Casualty Co.*, 795 F.2d 523, 525 (5th Cir. 1986). Plaintiffs contend that Barge 141 is not a vessel for purposes of the Jones Act, but rather, it is a work platform. Barge 141 is a 257 foot barge equipped with emergency oil spill equipment. It has no independent propulsion system, and it requires a tug for movement. CISPRI stations barges such as Barge 141 around Cook Inlet to be able to respond to oil spills. It was not permanently moored or secured. Decedent was not exclusively assigned to Barge 141, instead he performed various jobs, both onshore and on various vessels owned or operated by CISPRI.

In *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 570 (5th Cir. 1995), the Fifth Circuit articulated a three-factor test to determine whether an unconventional craft such as Barge 141 is a work platform or a vessel for purposes of the Jones Act. The Court considers the following factors: (1) whether the structure was constructed and used as a work platform; (2) whether the structure was moored or secured at the time of the accident; and (3) whether the platform is capable of movement and whether transportation is merely incidental to the platform's primary function. *Id.*

As to the first factor, Barge 141 was originally constructed as an oil barge. It was later converted into an oil spill response barge, and outfitted with emergency spill equipment. Thus, unlike an "indefinitely, shore-side, floating casino" or a stationary drilling rig, Barge 141 was constructed for use as a moveable work site, capable of being transported to the site of an oil spill on an as-needed emergency basis. *Cf. Holmes v. Atlantic Sounding Co.*, 429 F.3d 174, 184–87 (5th Cir. 2005) (finding that a barge used as a floating dormitory and was towed to locations for the housing of company's employees working on dredging projects did not quality as a vessel); *Pavone*, 52 F.3d at 570 (finding that an "indefinitely moored, shore-side, floating casino[]" is a nonvessel for purposes

-4-

of the Jones Act); *Kerr-McGee v. Ma-Ju Marine Servs., Inc.*, 830 F.2d 1332, 1336 (5th Cir. 1987) (fixed platforms are not vessels for purposes of the Jones Act).   One of Barge 141's primary characteristics was that it was mobile and could be used to assist with offshore oil spills at various locations.  Thus, there was a maritime purpose to its construction and use.  This factor supports Barge 141's status as a vessel.

The second factor does not weigh for or against Barge 141's vessel status.  At the time of the fatal accident, Barge 141 was in the initial stages of being moved to its winter station near Seldovia, Alaska.  The accident occurred when Decedent attempted to raise the stern anchor.  This factor does little to determine Barge 141's vessel status.

The final factor weighs heavily in favor of Barge 141's status as a vessel. Barge 141 moves by tug, and it is not permanently or indefinitely moored at any single location.  More importantly, transportation is vital to Barge 141's "primary mission"—as an emergency response barge, its primary purpose is to be moved across navigable waters to assist with oil spills in Cook Inlet.  When taken as a whole, these factors support Barge 141's vessel status.  Barge 141 is a vessel for purposes of the Jones Act.

The next question is whether Decedent contributed to the function of Barge 141.  At the time of the accident, Decedent was an oil spill technician for CISPRI.  This job involved both onshore and offshore duties.  His job description included the requirements that he be able to (1) navigate small vessels; (2) embark/disembark vessels moving in rough seas; (3) know seamanship skills; (4) assist in the rescue of a co-worker from the water and of assisting in self-rescue for a man-over-board situation; and (5) perform routine maintenance on vessel engines.  At the time of the accident, Plaintiff was operating the stern anchor winch, which contributed to the mission, function, and navigation of Barge 141.  The facts clearly demonstrate, and Plaintiff does not rebut, that Decedent contributed to

the function of Barge 141, and that he was regularly exposed to the "perils of the sea." *Chandris*, 515 U.S. at 368.

### 2. Connection to a Vessel in Navigation

Decedent must also have a "connection to a vessel in navigation that is substantial in terms of both duration and nature." *Id.* The minimum amount of offshore work time required to show a connection to a vessel of substantial duration is 30%. *See Chandris*, 515 U.S. at 371, 115 S. Ct. at 2191; *Barrett v. Chevron USA, Inc.*, 781 F.2d 1067, 1076 (5th Cir. 1986). Defendant has provided Decedent's time sheets, which demonstrate that maritime work constituted 32% of his work time. Plaintiffs have not rebutted this evidence, but instead argue that 32% is not enough. The Court finds that under the circumstances present in this case, it is enough. Furthermore, as an oil spill technician, Decedent's work aboard Barge 141 and other similar vessels within the control of his employer was a critical aspect of his job. The facts clearly demonstrate that Decedent had a connection to a vessel that was substantial in terms of both duration and nature.

Decedent was a Jones Act seaman. He contributed to the function of a vessel, and had a connection to a vessel in navigation that was both substantial in duration and nature.

### B. Application of General Maritime Law

Whether federal admiralty jurisdiction applies to a tort claim is governed by a two-part test articulated by the Supreme Court in *Sisson v. Ruby*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1995). *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995). First, the Court must determine whether the tort occurred on navigable water or whether an injury suffered on land was caused by a vessel on navigable water. *Id.* Second, the Court must assess the connection to maritime activity by determining whether the incident has a potential disruptive impact on maritime commerce and whether the activity giving rise

-6-

to the incident shows a substantial relationship to maritime activity.  *Id.*

In this case, the incident giving rise to Decedent's death took place on the Nikishi Bay, off the coast of Alaska.  This is clearly a navigable water, and the first part of the *Sisson* test is satisfied.  As to the second part, activity which causes injury to a Jones Act seaman causes a disruptive impact on maritime commerce.  *See Scarborough v. Clemco Indus.* 391 F.3d 660, 665 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1932 (2005).  Decedent was operating the stern anchor winch when he was struck on the head by a steel anchor cable.  The activity Decedent was engaged in at the time of his fatal injury was a maritime activity—he was operating the stern anchor.  Therefore, both parts of the *Sisson* test are satisfied, and Plaintiffs' claims are governed  by federal admiralty jurisdiction and general maritime law.

*C.  Plaintiffs' Claims Under the Texas Wrongful Death Act*

The Fifth Circuit recently announced in *Scarborough v. Clemco Indus.*, that Jones Act seamen and their survivors may not recover non-pecuniary damages from non-employer third parties.  *Id.* at 668.  In *Scarborough*, survivors of a Jones Act seaman sought damages, alleging that the decedent in that case dies of silicosis as a result of the defendants' negligence.  *Id.* at 662.  The decedent in that case had already obtained $650,000 from his employer and the manufacturers of the vessel equipment that caused his disability almost 25 years prior to his death.  *Id.*  His survivors then brought a wrongful death suit against a majority of the same defendants that the decedent had already prevailed against.  *Id.* The District Court held and the Fifth Circuit affirmed that: (1) the plaintiffs' cause of action was governed by maritime law and subject to federal admiralty jurisdiction, and (2) that a Jones Act seaman and his survivors could not recover non-pecuniary damages in a wrongful death suit against a non-employer third party.  *Id.* at 662–63.  The reasoning behind the Fifth Circuit's decision is that a Jones Act seaman cannot recover non-pecuniary damages from a non-employer.  The Fifth Circuit

-7-

found that "[i]t would be improper for this court to allow the surviving spouse and heirs of a Jones Act seaman to recover non-pecuniary damages in [a] case when Congress has disallowed the recovery of identical damages in a Jones Act suit." *Id.* at 668. The facts and circumstances present in this case are similar to those present in *Scarborough*, and the Court finds that *Scarborough* controls the matter at hand.

Plaintiffs' claims against Defendant are for non-pecuniary damages under the Texas Wrongful Death Act. As the manufacturer of the stern anchor winch, Defendant is a non-employer third party. As previously established, Plaintiffs' claims, are governed by general maritime law and federal admiralty jurisdiction. It does not matter that Plaintiffs brought their claims under the Texas Wrongful Death Act. As such, Plaintiffs' claims against Defendant under the Texas Wrongful Death Act for non-pecuniary damages are barred. These are the only claims that Plaintiffs have brought against Defendant, therefore, Defendant's Motion for Summary Judgment is **GRANTED** since it has established that it is entitled to judgment as a matter of law and Plaintiffs have failed to raise any genuine issues of material fact.

## IV.  Conclusion

Defendant has shown that this lawsuit comes within federal admiralty jurisdiction and general maritime law. Defendant's Motion to Apply General Maritime Law is **GRANTED**. Defendant has shown that Plaintiffs cannot prevail as a matter of law under their Complaint. Defendant's Motion for Summary Judgment is hereby **GRANTED**. Plaintiffs' claims under the Texas Wrongful Death Act against Defendant Cross Equipment Ltd. are hereby **DISMISSED WITH PREJUDICE**. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date. A Final Judgment as to this and all other claims will be issued in due course.

**IT IS SO ORDERED.**

**DONE** this 9th day of December, 2005, at Galveston, Texas.


Samuel B. Kent
United States District Judge